UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAMUEL A. OLATUNJI, </br></br> Plaintiff, </br></br> v. </br></br> DISTRICT OF COLUMBIA </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil No. 10-1693 (RCL) </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM OPINION

Plaintiff Samuel A. Olatunji, a black male working for the District of Columbia Department of Transportation ("DDOT"), brought a two-count complaint against defendant District of Columbia alleging racial and sexual discrimination (Count I), and retaliation (Count II), in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Complaint, Oct. 4, 2010, ECF No. 1. Plaintiff claims, *inter alia*, that the DDOT demoted him as retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶¶ 7–17. Before the Court is the defendant's Motion for Summary Judgment, Mar. 15, 2012, ECF No. 12. Upon consideration of the motion, the plaintiff's Opposition, Apr. 16, 2012, ECF No. 13, the defendant's Reply thereto, Apr. 24, 2012, ECF No. 14, and the record herein, the Court will grant defendant's Motion for Summary Judgment.

I.   **BACKGROUND**

Plaintiff Samuel Olatunji is a black male who was born and raised in Ghana, Africa. Compl. ¶ 7. He began working for the District of Columbia as a civil engineer in 1990. *Id*. During the period relevant to the Complaint, Olatunji worked as a Supervisory Civil Engineer

and Project Manager in the DDOT Infrastructure Project Management Administration. *See* Def.'s Statement of Undisputed Material Facts ¶ 2 ("Def.'s SMF"), Mar. 15, 2012, ECF No. 12; Pl.'s Resp. to Def.'s SMF ¶ 2 ("Pl.'s SMF Resp."), Apr. 16, 2012, ECF No. 13-2. In that role, Olatunji monitored the day to day operations of DDOT construction projects. *See* Def.'s SMF ¶ 3; Pl.'s SMF Resp. ¶ 3. Olatunji's immediate supervisor was Ali Shakeri, a male of Iranian descent. Compl. ¶ 10; Ex. 3 to Def.'s Mot. Summ. J.

In February 2008, Olatunji filed a Charge of Discrimination with the D.C. Office of Human Rights and the EEOC, in which he alleged discrimination, retaliation, and a hostile work environment. Def.'s SMF ¶ 4; Pl.'s SMF Resp. ¶ 4; Ex. 4 to Def.'s Mot. Summ. J. In that 2008 Charge, Olatunji alleged that Shakeri treated him differently than a similarly-situated colleague, an Iranian female. Ex. 4 to Def.'s Mot. Summ. J. He also claims he received poor performance evaluations as retaliation for filing a January 2007 internal EEO complaint, and was subjected to threats and demeaning comments that constituted a hostile work environment. *Id.* In March 2008, Olatunji and DDOT entered into a settlement agreement which ended the then-pending 2008 Charge. Def.'s SMF ¶ 5; Pl.'s SMF Resp. ¶ 5; Ex. 5 to Def.'s Mot. Summ. J.

In February 2009, Olatunji filed a second Charge of Discrimination with the EEOC. Def.'s SMF ¶¶ 6–7; Pl.'s SMF Resp. ¶¶ 6–7; Ex. 6 to Def.'s Mot. Summ. J. In this Charge, Olatunji alleged he suffered verbal abuse, reduction of job responsibilities, and denial of work assistance as a consequence of racial discrimination and retaliation. Ex. 6 to Def.'s Mot. Summ. J. The 2009 Charge also alleged that DDOT unjustly demoted Olatunji from a Supervisory Civil Engineer to a Civil Engineer as retaliation for the March 2008 settlement agreement. *Id.* On June 28, 2010, the EEOC issued a right-to-sue letter, allowing Olatunji to bring suit in federal court on the allegations contained in the 2009 Charge. Pl.'s SMF ¶ 7; Def.'s SMF Resp. ¶ 7; Ex.

7 to Def.'s Mot. Summ. J.  On October 4, 2010, Olatunji filed a Complaint in the U.S. District Court for the District of Columbia alleging that the District of Columbia discriminated and retaliated against plaintiff in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Compl., ECF No. 1.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The mere existence of *any* factual dispute will not defeat summary judgment; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).  A fact is material if, under the applicable law, it could affect the outcome of the case.  *Id*.  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  A nonmoving party must establish more than "the existence of a scintilla of evidence" in support of its position.  *Id*. at 252.  The inferences drawn from the evidence "must be reasonably probable and based on more than mere speculation."  *Rogers Corp. v. E.P.A.*, 275 F.3d 1096, 1103 (D.C. Cir. 2002) (citations omitted).  The nonmoving party may not rely solely on allegations or conclusory statements.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  The nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id*.  If the evidence presented is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50.

## III.     DISCUSSION

### A.     Plaintiff's Title VII Claims are Untimely, as Plaintiff Concedes

Plaintiff brought claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, 2000e–3, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Compl. ¶ 1. As plaintiff concedes, Pl.'s Opp'n 5 n.1, his Title VII claims are untimely. Therefore, this Court must grant the defendant summary judgment as to the plaintiff's Title VII claims.

A party must file a Title VII suit in federal court within 90 days of receiving an EEOC right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1). A court presumes a party receives a right-to-sue letter within three days of the letter's issuance. *See Smith-Hayne v. District of Columbia*, 155 F.3d 575, 578 n.3 (D.C. Cir. 1998). Thus, in the typical case a party has 93 days from the date the EEOC issues a letter to file suit in federal court. *See Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 158 (D.D.C. 2004). In the instant case, the EEOC issued a right-to-sue letter on June 29, 2010. *See* Ex. 7 to Def.'s Mot. Summ. J. Applying the three-day rule, the Court would assume that plaintiff received the letter by July 2, 2010. Thus, Olatunji would have 90 days from July 2nd to bring suit—with the limitations period expiring on September 30, 2010.

Plaintiff brought this suit on October 4, 2010—four days after the limitations period ran. Plaintiff concedes this point: "The District appears to be correct that Plaintiff filed his suit outside of the 90 day window for Title VII. Plaintiff is therefore conceding that claim." Pl.'s Opp'n 5 n.1. Thus, Defendant is entitled to summary judgment on plaintiff's Title VII claims.

### B.     Plaintiff Has No Viable Claims Under 42 U.S.C. § 1981

While conceding the untimeliness of his Title VII claims, plaintiff argues that he has stated a claim under 42 U.S.C. § 1981. While neither of the plaintiff's claims state that they are

4

brought under 42 U.S.C. § 1981[1], the opening paragraph of the Complaint states that the "matter is brought under [Title VII]…and the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981, to redress race (African) and sex (male) discrimination, and retaliation (prior protected activity)." Compl. ¶ 1.  Since the defendant District of Columbia is a state actor, plaintiff cannot sue the District directly under Section 1981, but may only do so through the enforcement mechanism of 42 U.S.C. § 1983.  Section 1983 claims require the plaintiff to be injured by some action taken pursuant to the official policy, practice, or custom of the defendant.  Since plaintiff fails to allege any facts that would infer municipal liability, he has failed to state a viable claim.  None of the exhibits or affidavits include facts or allegations which, if included in an amended complaint, would help plaintiff state a plausible claim.  As there are no material facts in dispute and defendant is entitled to judgment as a matter of law, this Court will grant the District summary judgment on plaintiff's claims under § 1981 and/or § 1983.

    **1.**    *Legal Standard under Section 1981*

Section 1981 protects the rights of all persons to, *inter alia*, "make and enforce contracts."  42 U.S.C. § 1981(a).  The law defines the term "make and enforce contracts" as "including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Section 1981 can encompass employment discrimination and retaliation claims.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450–52 (2008) (§ 1981 encompasses retaliation claims); *Rivers v. Roadway Express*, 511 U.S. 298, 302 (1994) (Civil Rights Act of 1991 states that § 1981 reaches all phases of contractual relationship, including discriminatory contract terminations).

---

[1] Claim I is titled, "Defendant Violated Title VII of Civil Rights Act Prohibiting Discrimination Based on Sex and Race," Compl. 4, ¶16, and Claim II is titled, "Defendant Violated Title VII of Civil Rights Act by Retaliating Against Plaintiff for Prior EEO Complaint," *id.* at 4, ¶17.

There is considerable overlap between Title VII and Section 1981. "Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975). "Congress noted 'that the remedies available to the individual under Title VII are co-extensive with the indiv(i)dual's [*sic*] right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive.'" *Id.* (*quoting* H.R. REP. NO. 92-238, at 19 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2154).

Courts analyze Title VII and Section 1981 employment discrimination claims under similar legal standards. "Under either Title VII or Section 1981, [the plaintiff] must demonstrate by a preponderance of the evidence that the actions taken by the employer were 'more likely than not based on the consideration of impermissible factors' such as race, ethnicity, or national origin." *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 18 (D.D.C. 2009) (*quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Under this standard, the plaintiff may either prove his claim with direct evidence of discrimination or he may indirectly prove discrimination under the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* burden-shifting framework applies to employment discrimination claims, *id.*; retaliation claims, *Carney v. American Univ.*, 151 F.3d 1090, 1094 (D.C. Cir. 1998); and claims brought pursuant to Section 1981, *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

Under the *McDonnell Douglas* framework, the plaintiff has "the initial burden of proving by a preponderance of the evidence a prima facie case." *Pollard*, 610 F. Supp. 2d at 18. If the

plaintiff succeeds, "the burden shifts to the defendant to articulate some legitimate, non-discriminatory or non-retaliatory reason justifying its conduct." *Id*. If the defendant is successful at this step, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*," *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142–43 (2000) (internal citations and quotation marks omitted); or "retaliation *vel non*," *Pardo–Kronemann v. Donovan*, 601 F.3d 599, 603–04 (D.C. Cir. 2010). In other words, after the employer has articulated a non-discriminatory or non-retaliatory justification, the only issue is whether "based on all the evidence, a reasonable jury could conclude that [the] proffered reason…was pretext for retaliation" or discrimination. *Id*. (internal citations and quotation marks omitted).

Nevertheless, "Section 1981 is not coextensive in its coverage with Title VII." *Johnson*, 421 U.S. at 460. There are important differences. Congress made Title VII the exclusive remedy for federal employment discrimination and retaliation claims, preempting Section 1981 and other remedies. *Brown v. General Services Admin.*, 425 U.S. 820, 829 (1976). This does not preclude the instant case, as "Congress did not similarly designate Title VII as the exclusive remedy for state and local employees." *Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 110 (D.D.C. 2010) (considering claims that District of Columbia violated rights conferred by § 1981 though acts of employment discrimination and retaliation).[2]

The key difference is that the Supreme Court has held that Section 1981 does not itself provide an independent remedy against state actors. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). In *Jett*, the Supreme Court noted Section 1981 did not explicitly create a private right of action, and the Court is hesitant to imply rights of action "where Congress has

---

[2] This case also held that when the defendant is a state actor such as the District of Columbia, violations of the substantive rights conferred by § 1981 could only be redressed through the remedial scheme of 42 U.S.C. § 1983. *See Hamilton*, 720 F. Supp. 2d at 110. This issue is discussed in more detail *infra*.

7

established its own remedial scheme." *Id*. at 732.  After considering legislative history, the Court stated that "Congress intended that the explicit remedial provisions of [42 U.S.C.] § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Id*.  Since a plaintiff may only enforce the rights conferred in § 1981 against a state actor via § 1983, the plaintiff must meet the requirements for municipal liability stated in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). *See Jett*, 491 U.S. at 735–36 ("Thus to prevail on his claim for damages against the school district, petitioner must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.").

*Monell* rejects a respondeat superior theory of municipal liability; the District cannot be held liable simply because it employs a wrongdoer.  436 U.S. at 691.  As *Monell* states:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 694.  The plaintiff must be injured by some "action [made] pursuant to official municipal policy." *Id*. at 691.  "[M]unicipal liability should not be imposed when the municipality was not itself at fault," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985), and plaintiff must "show fault on the part of the city based on a course its policymakers consciously chose to pursue," *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).  Simply being a "supervisor" does not make a District employee a "policymaker" for the purposes of *Monell*. *See*, *e.g.*, *St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (O'Connor, J., plurality opinion); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997).  Instead, the official must have "final policymaking authority [under] state law," *Triplett*, 108 F.3d at 1453—an issue

which "is assessed by looking to local law." *Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 150 (D.D.C. 2012) (finding immediate supervisors and Deputy Fire Chief were not final policymakers in §§ 1981 and 1983 suit against the District for employment discrimination).

### 2.   *Plaintiff's Untimeliness Under Title VII Does Not Preclude His Section 1981 Claims*

The plaintiff's failure to exhaust administrative remedies or timely file under Title VII does not necessarily preclude his claims under Section 1981. *See Hamilton*, 720 F. Supp. 2d at 109–10. "[T]he remedies available under Title VII and under § 1981, although related, and…directed to most of the same ends, are separate, distinct and independent." *Johnson*, 421 U.S. at 461. As Judge Bates of this Court stated, "[b]ecause state employees are not required to proceed through Title VII, they need not exhaust those administrative remedies prior to bringing suit under §§ 1981 or 1983 when the rights asserted are…not conferred by Title VII." *Hamilton*, 720 F. Supp. 2d at 109. This Court finds that logic equally applicable to this case. Since plaintiff claims a violation of rights independently conferred by Section 1981, Title VII's 90 day limitations period does not apply and does not bar his claims under Section 1981.

### 3.   *Section 1981 Does Not Confer Plaintiff an Independent Right of Action Against the District of Columbia*

In his Opposition Brief, plaintiff speaks of Section 1981 and Title VII as if they were virtually synonymous—he launches into a discussion of the merits of his retaliation claim is if it were brought under Title VII. Pl.'s Opp'n 7–11. Such a discussion may have been appropriate if he had sued a private party, as courts analyze retaliation claims brought under Title VII and Section 1981 under the *McDonnell Douglas* framework. *See Pollard*, 610 F. Supp. 2d at 18–19. However, the defendant here is not a private actor but the District of Columbia. While Title VII does not provide the exclusive remedy against the District of Columbia for employment

discrimination and retaliation, *see Hamilton*, 720 F. Supp. 2d at 110, "[v]iolation of the rights guaranteed by § 1981 by state entities can be remedied exclusively through the cause of action for damages created by § 1983," *id.* at 114. "To prevail on a claim under § 1981 against the District, therefore, a plaintiff must show that the violation of his ''right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.'" *Id.* (*quoting Jett*, 491 U.S. at 735–36).

Last year, Judge Bates of this Court considered whether Section 1981 conferred a private right of action against the District of Columbia. *Sledge v. District of Columbia*, 869 F. Supp. 2d 140 (2012). In that case, the plaintiff argued that the Civil Rights Act of 1991, Pub. L. 102–166, 105 Stat. 1072., abrogated the Supreme Court's ruling in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). As Judge Bates explained:

> The Civil Rights Act of 1991 amended § 1981. In addition to adding a definition of the phrase "make and enforce contracts," 42 U.S.C. § 1981(b), the amendments mandated that the rights protected by § 1981 are "protected against impairment by nongovernmental discrimination and impairment under color of State law," 42 U.S.C. § 1981(c). The question now presented is whether the 1991 amendments abrogated the Court's holding in *Jett* and created a separate cause of action under § 1981 against local government entities. Seven circuits have considered this issue, with all but one holding that Congress did not create such a cause of action by amending § 1981. *Compare McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3rd Cir. 2009) ("[W]e join five of our sister circuits in holding that no implied right of action exists against state actors under 42 U.S.C. § 1981."), *Arendale v. City of Memphis*, 519 F.3d 587, 599 (6th Cir. 2008) (same), *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) (same), *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 464 (5th Cir. 2001) (same), *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (same), and *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir. 1995) (same), *with Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.SC. § 1981 contains an implied cause of action against state actors, thereby overturning *Jett*'s holding that 42 U.S.C. § 1983 provides the exclusive remedy against state actors for the violation of rights under 42 U.S.C. § 1981.").

*Sledge*, 869 F. Supp. 2d at 143–44. Judge Bates then explained that the outlying Ninth Circuit opinion relied on an interpretation of *Cort v. Ash*, 422 U.S. 66 (1975) that has since been

strongly disfavored by the Supreme Court, *Alexander v. Sandoval*, 532 U.S. 275 286–87 (2001), and the D.C Circuit, *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1078 (D.C. Cir. 2012). *Sledge*, 869 F. Supp. 2d at 144. Thus, Judge Bates found that "in the 1991 amendments, Congress neither explicitly created a remedy against state actors in addition to § 1983, nor expressed its intent to overrule *Jett*." *Id*. at 145. This Court agrees with Judge Bates' approach, and holds that plaintiff cannot maintain an independent cause of action under § 1981 against the District of Columbia.

    **4.** *Plaintiff Alleges No Facts Whatsoever That Would Support Municipal Liability Under* **Monell** *and its Progeny*

  Plaintiff cannot sue the District for employment discrimination and retaliation through a private right of action conferred by § 1981. Instead, he may only pursue alleged violations of his substantive § 1981 rights through the remedial scheme of § 1983. As such, the plaintiff must allege that his injuries were caused by a municipal custom or practice within the meaning of *Monell*, 436 U.S. 658, and its progeny. *See*, *e.g.*, *Jett*, 491 U.S. at 735–36; *Sledge*, 869 F. Supp. 2d at 145; *Hamilton*, 720 F. Supp. 2d at 110. He may not rely on a respondeat superior theory of municipal liability, and may only sue the District if it discriminated or retaliated against him pursuant to official District policy. *See Harris v. District of Columbia*, 696 F. Supp. 2d 123, 129 (D.D.C. 2010). In order to establish liability, the District must have acted pursuant to a "policy statement, ordinance, regulation, or decision officially promulgated by" the District, *Monell*, 436 U.S. at 690, or a practice "so permanent and well settled as to constitute a 'custom or usage' with force of law," *id*. at 694.

  Nowhere in the Complaint does plaintiff mention any official policy or custom of the District. Plaintiff mentions § 1981 once in the opening paragraph, Compl. ¶ 1, and nowhere else. Plaintiff does not mention § 1983 *anywhere* in his Complaint or Opposition Brief, or even

acknowledge the standard for municipal liability under *Monell*. Plaintiff's Complaint reads like a standard Title VII complaint, with a passing reference made to § 1981. Plaintiff's Opposition Brief reads like a standard Title VII brief, and ignores completely whether plaintiff may sue the District directly under § 1981.

"[A] section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom." *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1966). In this case, plaintiff "has failed to include any allegations whatsoever demonstrating how the individual actions cited in his Complaint constitute 'the official policy' of the District of Columbia." *Harris*, 696 F. Supp. 2d at 129. He has even failed to include "naked assertion[s]" that the District acted pursuant to official policy. *Ashcroft*, 556 at 678; *Twombly*, 550 U.S. at 557. Plaintiff has completely failed to state a claim against the District of Columbia because he cannot sue directly under § 1981, and has failed to allege any facts regarding District policy or custom as required by § 1983. Looking beyond the Complaint, nothing in the public record or the record of this case plausibly infers municipal liability.

### 5. *Defendant is Entitled to Summary Judgment*

Plaintiff's Complaint fails to state a claim upon which relief can be granted under either 42 U.S.C. § 1981 or § 1983. Plaintiff's claims would fail even under the Rule 12(b)(6) standard, which is highly deferential to the facts alleged in the non-moving party's complaint. *See*, *e.g.*, *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In this case, defendant moved for summary judgment under Rule 56, and this Court thinks it is appropriate to resolve the § 1981 claims under Rule 56. There has been a full and fair opportunity for discovery in this matter. *See* Scheduling Order, Feb. 22, 2011, ECF No. 5 (setting three month discovery period; establishing

deadline for dispositive motions five days after close of discovery). Plaintiff has not requested any additional discovery to respond to the defendant's Motion for Summary Judgment. FED. R. CIV. P. 56(d).[3] Since plaintiff's Section 1981 claims are facially and legally implausible, defendant can meet its burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a), rather easily. *See* Def.'s Mot. Summ. J. 3 n.1; Def.'s Reply 2–5.[4]

The Court has looked beyond the four corners of plaintiff's Complaint to see if anything could infer municipal liability. *Cf. Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006). The Court examined the exhibits, declarations, and affidavits submitted by both parties in the light most favorable to the plaintiff to determine if anything in the record could infer that plaintiff was injured pursuant to an official policy. After looking at the record, this is a typical employment discrimination and retaliation suit—properly addressed,

---

[3] While defendant did not devote any substantial portion of its Motion for Summary Judgment to plaintiff's § 1981 claims, the District did object to the § 1981 claims in its summary judgment motion. Def.'s Mot. Summ. J. 3 n.1. Furthermore, plaintiff cannot claim (nor does he) any "surprise" that defendant objected to his § 1981 claims, as plaintiff premises his opposition on the viability of those § 1981 claims. *See* Pl.'s Opp'n 5–7.

[4] While courts are not obliged to "consider cursory arguments made only in a footnote," *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999), that is not a hard and fast rule. In this case, where plaintiff gave very little attention to Section 1981 in his Complaint, it was not improper for defendant to object to plaintiff's § 1981 claims in a footnote in the summary judgment motion.

The defendant's reply brief develops the §1981 argument in much greater detail. Nevertheless, defendant had raised the Section 1981 issue in its opening brief. Def.'s Mot. Summ. J. 3 n.1. Furthermore, defendant's reply responded directly to the plaintiff's lengthy discussion, presented in the opposition brief, of Section 1981. Pl.'s Opp'n 5–11. Up to this point, Section 1981 was cosigned to a passing reference in plaintiff's Complaint and did not seem particularly central.

The doctrine that courts should not consider arguments made for the first time in a reply brief is a prudential doctrine. *See Natural Res. Def. Council, Inc. v. E.P.A.*, 25 F.3d 1063, 1079 (D.C. Cir. 1994) (Wald, J., dissenting in part and concurring in part). The basis for that rule is that "allowing novel arguments to be introduced so late would be 'manifestly unfair to the appellee who, under our rules, has no opportunity for a written response,' and would 'risk the possibility of an improvident or ill-advised opinion.'" *Id*. (quoting *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)) (internal quotation marks and citation omitted).

In this case, there is no risk of "sandbagging" the plaintiff, *Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990), when plaintiff himself made Section 1981 the focus of his opposition. Defendant is not truly raising issues "for the first time" in its reply brief. The District is expounding on an earlier position, developed further in direct response to the plaintiff's opposition. The prudential factors in *Herbert* do not apply to this case.

when the District of Columbia is the defendant, though Title VII. There is absolutely nothing in the record that could plausibly infer municipal liability under Section 1983. Since the plaintiff's claims under §§ 1981 and 1983 are legally infirm under any plausible reading of the record, there are no material facts in dispute and defendant is entitled to summary judgment.

**IV.     CONCLUSION**

As plaintiff concedes, he failed to bring his Title VII claims in federal court within 90 days of receiving the EEOC right-to-sue letter. As such, plaintiff abandoned his Title VII claims and instead relied on the Civil Rights Act of 1866, as amended. 42 U.S.C. § 1981. While Section 1981 may function similarly to Title VII vis-à-vis private employers, the defendant here is a state actor. The Supreme Court held in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) that Section 1981 infers no private right of action against state actors such as the District of Columbia. Instead, 42 U.S.C. § 1983 provides the exclusive remedy for damages against a state actor for a violation of the rights conferred by § 1981. Since plaintiff must pursue his § 1981 substantive claims through the § 1983 remedial mechanism, the plaintiff must plead and prove that he was injured pursuant to some official policy, custom, or usage of the District of Columbia. Nothing in the Complaint or record plausibly provides any basis for municipal liability. Therefore, defendant is entitled to summary judgment on all counts and on all claims.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on July 19, 2013.